UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| DAVID L. KIMMEL, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Case No. 2:15-CV-83 NAB |
| NANCY A. BERRYHILL[1], Acting Commissioner of Social Security, | ) ) ) ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying David Kimmel's application for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 416, 423 *et seq.* Kimmel alleged disability due to spinal stenosis, degenerative disc disease, lumbargo, paracardites, pleurisy, cervicaligia, sciatica, possible chronic obstructive pulmonary disorder, possible hemochromatosis, and possible congestive heart failure. (Tr.172.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 12.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcripts and the medical evidence. The Court heard oral argument in this matter on January 5, 2017. For the reasons set forth below, the Court will affirm the Commissioner's final decision.

---

[1] At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of Social Security. Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Nancy A. Berryhill for Carolyn W. Colvin in this matter.

## I.  Issues for Review

Kimmel presents five issues for review. Kimmel contends that the administrative law judge (ALJ) erred by failing to find that he met Listing 1.04. Second, he states that the residual functional capacity (RFC) determination failed to include detailed findings that support the ALJ's determination of his limitations. Third, Kimmel contends that the ALJ erred by not giving appropriate weight to the medical source statement from a nurse practitioner. Fourth, Kimmel states that the ALJ also failed to give the proper weight to the opinions of his sister-in-law and sister. Finally, Kimmel states that the ALJ erred by relying upon the vocational expert's testimony that he could perform sedentary work. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## II.  Standard or Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Administration (SSA) uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations.

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To

determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III. Discussion

#### A. Listing 1.04

First, Kimmel contends that the ALJ should have found that he met Listing 1.04. The listing of impairments in Appendix 1 describes for each of the major body systems impairments considered to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a). "Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011); 20 C.F.R. § 404.1525(d) (An impairment cannot meet a listing based solely on a diagnosis). "For a claimant to show that his impairment matches a listing, it must

meet *all* of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990) (superseded by statute on other grounds). "The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

Listing 1.04 requires the following:

> A disorder of the spine, (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

The ALJ found that Kimmel had the severe impairments of disorders of the back, hemochromatosis, anxiety, chronic obstructive pulmonary disease, depression, and bipolar disorder. The ALJ specifically found that Kimmel's impairment of degenerative disc disease did not meet Listing 1.04, because he did not have one of the listed disorders, in conjunction with

evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, accompanied by sensory or reflex loss, and, in connection with the lumbar spine impairment, also a positive straight leg raising test. (Tr. 16.) Kimmel contends that the ALJ erred, because MRIs dated February 1, 2012 and March 27, 2013 indicated that he has spinal stenosis severe on the right at C5-6 and herniation at T1-12, disc protrusion at C3-4 and advanced facet anthrosis causing narrowing and impingement. Kimmel also contends that his spinal stenosis causes low back pain that requires him to use a cane to ambulate and use daily pain medication.

Based on the record in the evidence as a whole, the Court finds that the ALJ's determination that Kimmel's conditions did not meet or equal Listing 1.04 is supported by substantial evidence. First, the ALJ expressly acknowledged that Kimmel was diagnosed with spinal stenosis. (Tr. 19.) Second, to meet a listing an individual has to meet all of the requirements for the listing. Although not stated clearly, it appears in his brief Kimmel is arguing that he meets Listing 1.04(A) and Listing 1.04(C). At oral argument, Kimmel only argued that he met Listing 1.04(A). Kimmel has failed to demonstrate that he meets all of the requirements of Listing 1.04(A) or (C). Kimmel has not provided support in his brief or at oral argument that he had sensory or reflex loss. Therefore, Kimmel does not meet all of the requirements for Listing 1.04(A).

Kimmel also did not establish that he was unable to ambulate effectively. The regulations provide:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation

6

> without the use of a hand-held assistive device(s) that limits
> the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b. "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school." *Id.* A review of the record as a whole indicates that although Kimmel uses a cane, there is no evidence that he is unable to independently initiate, sustain, or complete any activities. *See Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011) (claimant's difficulty in walking is not the type of extreme limitation on ambulation required under the regulations). Based on the foregoing, the Court finds that the ALJ did not err in finding that Kimmel did not meet Listing 1.04.

### B. RFC Determination

Kimmel contends that the RFC determination fails to include detailed findings that demonstrate how the evidence supports each conclusion. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

(8th Cir. 2006). "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009).

The ALJ found that Kimmel had the RFC to perform sedentary work with the following additional limitations: (1) never climb ladders, ropes, or scaffolds; (2) may occasionally climb ramps and stairs; (3) occasionally stoop, crouch, kneel, and crawl; (4) avoid all exposure to poorly ventilated areas, hazardous machinery (i.e., unshielded moving machinery), and unprotected heights; (5) limited to simple tasks as defined in the Dictionary of Titles as SVP levels 1 and 2 routine and repetitive tasks; (6) no strict production quota with an emphasis on a per shift rather than a per hour basis; (7) limited to occasional interaction with the general public, coworkers, and supervisors, and (8) limited to jobs that can be performed while using a hand held assistive device for uneven terrain or prolonged ambulation. (Tr. 17.)

SSR 96-8p, states: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at 7. "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis … and describe the maximum amount of each work related activity the individual can perform based on the evidence available in the case record. SSR 96-8p at 7. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

8

"Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (highly unlikely that ALJ did not consider and reject physician's opinion when ALJ made specific references to other findings set forth in physician's notes).

It appears that Kimmel wants the ALJ to format his opinion to explicitly match the severe impairment to each RFC limitation. In this case, the RFC determination and the discussion regarding the same is detailed and takes into consideration Kimmel's physical and mental impairments. Based on the foregoing, the Court finds that the ALJ's opinion provides a sufficient narrative of the medical evidence relied upon to support the limitations in the RFC and reversal on this basis is not required.

### C. Medical Source Statement from Reggie Westoff, APN

Next, Kimmel contends that the ALJ erred in affording little weight to treating source Reggie Westoff, a board certified nurse practitioner. The administrative record indicates that Westoff treated Kimmel between June 2013 and June 2014. (Tr. 724-32, 854-72, 1349-68, 1684-93.) At Kimmel's initial consultation, Westoff diagnosed Kimmel with major depressive disorder recurrent mild and anxiety disorder. (Tr. 731.) He was later diagnosed with episodic mood disorder and bipolar disorder II. (Tr. 726, 865.) During his initial visits, Kimmel reported that he had auditory hallucinations, and suicidal ideations. His mental status examinations were abnormal. (Tr. 724-32, 854-72.) By September 2013 and at visits thereafter, Kimmel's mental status examinations were normal and he reported that his medication was working well. (Tr. 1349-68, 1684-88.) During Kimmel's last visit in the record in June 2014, Kimmel indicated that he was having increased anxiety and his medication was adjusted. (Tr. 1689-93.)

On March 5, 2014, Westoff completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) (MSS) regarding Kimmel. (Tr. 1426-28.) In the MSS,

Westoff indicated that Kimmel had marked limitations[3] in all of the categories listed. (Tr. 1426-27.) The categories included ability to understand, remember, and carry out simple instructions; ability to make judgments on simple work-related tasks; ability to understand, remember, and carry out complex questions, ability to interact with the public, supervisors, and co-workers; and the ability to respond to usual work situations and changes in routine. (Tr. 1426-27.) Westoff also opined that Kimmel's impairments would cause Kimmel to be absent from work more than four days per month and be off task twenty-five percent or more of the time. (Tr. 1427.) He opined that Kimmel would not be able to work at all due to "chronic mental health & back problems." (Tr. 1428.)

The ALJ gave Westoff's MSS opinion little weight, because he was not an acceptable medical source and his opinion was inconsistent with the overall evidence of record, including his own progress notes, revealing unremarkable mental status examinations. Kimmel contends that the ALJ did not discuss the "totality of the circumstances," including that Westoff is a licensed nurse who passed a national exam, has a college degree, and has 300 hours of work supervised by a licensed professional. Kimmel asserts that Westoff's opinion should be given controlling weight, because he treated Kimmel for a year and he was in a better position to observe Kimmel's condition than the ALJ.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.* It then divides *other sources* into two groups: *medical sources* and *non-medical sources. Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish

---

[3] The MSS defined "marked" limitations as follows: "There is serious limitation in this area. There is a substantial loss in the ability to function. An assessment of Marked means the impairment will interfere with the individual's ability to perform work related activities thirty to fifty percent of the time." (Tr. 1426.)

10

> the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d). "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. "[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. §§ 404.1513(d), 416.913(d). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record).

Based on a review of the evidence in the record as a whole, the Court finds that the ALJ did not err in giving little weight to Westoff's opinion. The Court acknowledges that symptoms of mental impairments wax and wane. Just as a person with physical impairments need not be bedridden or completely helpless to be found disabled, a person with mental impairments does not have to be hospitalized or suicidal every day to be found disabled. *See Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (well settled law that a claimant need not be bedridden or helpless to be found disabled). The ALJ can properly consider, however, that Westoff's opinion was

inconsistent with the other evidence in the record as a whole and Westoff's own treatment records. Westoff's treatment records indicate that at the time the MSS was completed, Kimmel had normal mental status examinations and was doing well on his medication. (Tr. 1349-68, 1684-88.) Kimmel does not direct the Court to any evidence that shows consistency between Westoff's opinion and his treatment notes or other evidence in the record. Therefore, the Court finds that the ALJ did not err in his evaluation of Westoff's opinion evidence.

### D. Opinions of Kimmel's Family Members

Next, Westoff contends that the ALJ failed to give proper weight to the third-party opinions of his sister-in-law Elizabeth Kessel and his sister Caryl Stringer. The ALJ is required to carefully consider any information submitted by a claimant about his symptoms, including observations by other persons. 20 C.F.R. § 404.1529(c)(3). The ALJ can use information from other sources to show the severity of a claimant's impairments and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513. SSR 96-7p requires an ALJ, when determining the credibility of a claimant's statements, to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p. Though SSR 96-7p mandates that an ALJ consider the testimony of "other persons," it is well established that an ALJ is free to reject such testimony. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996).

The Eighth Circuit, in *Black v. Apfel*, held that where an ALJ has properly discredited the complaints of the claimant, the ALJ is equally empowered to reject the cumulative testimony of lay witnesses. *Black*, 143 F.3d at 387. Furthermore, in *Ostronski*, the Eight Circuit found it

"acceptable" for the ALJ to reject the testimony of the claimant's mother, sister, and husband where the witnesses were not qualified to render an opinion on the claimant's ability to work, their testimony merely corroborated the claimant's testimony, and their testimony conflicted with the medical evidence regarding the claimant's functional capacities. *Ostronski*, 94 F.3d at 419.

In this case, Kessel and Stringer completed detailed statements regarding Kimmel's ability to do work related activities, his level of pain, his mental faculties, and his mobility. (Tr. 224-29.) The ALJ gave the statements slight weight. (Tr. 22.) The ALJ noted that Kimmel's family members were not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency of unusual moods or mannerisms. (Tr. 22.) The ALJ also noted that they were not disinterested parties. (Tr. 22.) The ALJ found that their statements were inconsistent with the overall evidence of record. (Tr. 22.) Kimmel contends that if the sisters' statements were properly credited, they would support a finding of disability, because they are consistent with Kimmel's medical diagnoses of spinal stenosis and hemochromatosis.

Based on a review of the evidence in the record as a whole, the Court finds that the ALJ did not err in his assessment of Kessel and Stringer's statements. "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairment, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006) at *6. The ALJ considered these factors and provided support in the record for his opinion. Therefore, the Court finds that the ALJ's decision on the weight given to Kimmel's sisters' opinions was supported by substantial evidence.

### E. Vocational Expert Testimony

Finally, Kimmel contends that the vocational expert's testimony was not supported by substantial evidence, because her testimony that Kimmel's use of a cane would not erode the job market is not supported by substantial evidence. Kimmel also asserts that the vocational expert's testimony and Westoff's mental MSS establish that he cannot do sedentary work, because he is off task thirty to fifty percent of the time. "The testimony of a vocational expert is required when a claimant has satisfied his initial burden of showing that he is incapable of performing his past relevant work." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). The testimony of a VE should be consistent with the Dictionary of Occupational Titles (DOT)[4]. *See* Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 at *2 (December 4, 2000). Evidence from a VE can include information not listed in the DOT. SSR 00-4p at *2. This is because the DOT lists "maximum requirements of occupations" and "not the range of requirements" at any particular job or place. *Id*. at *3. A VE may be able to provide more specific information about jobs or occupations than the DOT. SSR 00-4p at *3.

In this case, the ALJ asked the vocational expert to identify occupations that met the following limitations:

> A person of claimant's age, education, and work experience who is able to do sedentary work, with both[5] climbing of ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, occasional stooping, crouching, kneeling, and crawling. Avoid all exposure to poorly ventilated areas. Must avoid all exposure to hazardous machinery, and what I mean by that is unshielded moving machinery. And avoid all exposure to unprotected heights. Work is limited to

---

[4] The Dictionary of Occupational Titles ("DOT") is a guide from the United States Department of Labor regarding job ability levels that has been approved for use in Social Security cases. *See Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998) (citing 20 C.F.R. § 404.1566(d)(1)); *Porch v. Chater,* 115 F.3d 567, 571 (8th Cir.1997)). "The DOT is the Commissioner's primary source of reliable job information. The Commissioner uses the DOT to classify occupations as skilled, semiskilled or unskilled." *Fines*, 149 F.3d at 895 (internal citations omitted).

[5] This appears to be a transcription error where "both" should be transcribed as "no."

> simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks with no strict production quota, with the emphasis being on a per shift rather than per hour basis, which means that an employer would require so many widgets per day versus so many widgets per hour. With only occasional interaction with the general public, coworkers, and supervisors.

(Tr. 55.) The vocational expert responded that the hypothetical claimant could perform the jobs of dowel inspector, lens inserter, and patcher. (Tr. 56.) The ALJ then asked the vocational expert if the additional limitation of using a handheld assistive device would change any of the jobs that the vocational expert found that the hypothetical claimant could perform. (Tr. 56.) The vocational expert responded no. (Tr. 56.) The vocational expert did not state, as Kimmel claims, that "the use of a cane would not erode the job market." The ALJ was specifically asking if the jobs would be eliminated from jobs the hypothetical claimant could perform. The vocational expert was not asked and did not testify regarding the erosion of the job base. Finally, the ALJ found that Westoff's MSS was entitled to little weight, therefore, the vocational expert's testimony that an individual could not perform work if he were off task thirty to fifty percent of the time was not relevant. Therefore, the Court finds that the ALJ did not err in relying on the vocational expert's testimony that Kimmel could perform less than sedentary work.

## IV. Conclusion

A review of the record as a whole demonstrates that Kimmel had some restrictions in his functioning and ability to perform work related activities during the relevant time period, however, he did not carry his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 22.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Nancy A. Berryhill for Carolyn W. Colvin in the court record of this case.

Dated this 24th day of March, 2017.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE